**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KAREN MARIELA AGUAYO MONTES, | ) | CASE NO. 1:26-CV-00919-SO |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| SCOTT A. HILDENBRAND, *et al.* | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| | ) | |
| Respondents. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |

## I.     INTRODUCTION

Petitioner, Karen Mariela Aguayo Montes ("Ms. Aguayo Montes") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. (ECF No. 1). In the petition, Ms. Aguayo Montes, a citizen of Mexico who says she has lived in the United States since she was 10 years old, alleges that her due process rights are being violated because she is being detained at Geauga County Jail pending removal proceedings and has not been granted a bond hearing. Ms. Aguayo Montes names as respondents: Sheriff Scott A. Hildenbrand; Rebecca Adducci; Todd M. Lyons, Acting Director of U.S. ICE; and Todd Blanche, Acting United States Attorney General.

This matter was referred to me on April 17, 2026 under Local Rule 72.2 to prepare an expedited report and recommendation on Ms. Aguayo Montes' petition. (ECF No. 2). On April 24, 2026, Sheriff Hildenbrand filed a motion to dismiss him as a respondent pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that he is not a proper respondent. (ECF No. 5). On April 27, 2026, the remaining Respondents (the "Federal Respondents") filed an answer and return of writ. (ECF No. 6). Ms. Aguayo Montes filed a traverse on April 29, 2026. (ECF No. 7). For the

1

reasons set forth below, I recommend that the Court GRANT IN PART Ms. Aguayo Montes'

petition for a writ of habeas corpus. I also recommend that the Court GRANT Sheriff

Hildenbrand's motion to dismiss, substitute ICE Field Office Director Kevin Raycraft for Rebecca

Adducci, and dismiss the remaining Federal Respondents.

## II.    FACTUAL AND PROCEDURAL BACKGROND

"For decades, noncitizens already present in the United States at the time of their arrest . .

. have been considered subject to discretionary detention." *Cuyun v. Raycraft*, No. 3:25-CV-

02785-JJH, 2026 WL 362791, at *7 (N.D. Ohio Feb. 10, 2026) (report and recommendation)

(citing Inspection and Expedited Removal of Aliens; Conduct of Removal Proceedings; Asylum

Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)).

In July 2025, however, the Department of Homeland Security ("DHS") issued an internal

memorandum, entitled "Interim Guidance Regarding Detention Authority for Applications for

Admission." *See Kaur v. Raycraft*, No. 4:25-CV-02679, 2026 WL 709728, at *2 and n.4 (N.D.

Ohio Mar. 13, 2026) (discussing memorandum). Under that memorandum, all individuals who

entered the United States without inspection were deemed "applicants for admission" under 8

U.S.C. § 1225(a) and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), regardless

of whether an individual was detained upon entry or had been present in the United States for

years. *Id.*[1]

On September 5, 2025, the Board of Immigration Appeals ("BIA") issued its decision in

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), holding that immigration judges "do[]

not have authority over [a] bond request because aliens who are present in the United States

without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A),

---

[1] The policy memorandum does not appear to be publicly available on any government site. *See Cuyun*, 2026 WL 362791, at *7 n.2. Yet it does not appear that the Federal Respondents have ever denied the existence of the memorandum.

and must be detained for the duration of their removal proceedings." *Id*. at 220.

Ms. Aguayo Montes is a citizen of Mexico who says that she has lived in the United States since she was 10 years old. On September 3, 2025, Ms. Aguayo Montes was detained by ICE and placed in removal proceedings. (ECF No. 1, PageID # 4). On the same day, Ms. Aguayo Montes received a notice to appear before an immigration judge, which stated that she was an "alien present in the United States who has not been admitted or paroled," rather than an "arriving alien." (ECF No. 6-1). Ms. Aguayo Montes says that she was detained in part because she was facing a state domestic violence charge. She also says that state prosecutors dismissed the state criminal case without prejudice.

Ms. Aguayo Montes states that she has an infant child who was born only months before she was taken into custody. Ms. Aguayo Montes also says that she has been separated from her infant child since ICE took her into custody. She says that she was breastfeeding the child at the time she was arrested and that her breasts have hardened since her arrest. She also says that her child has moved between caretakers since she was taken into custody because the child's father is also being detained.

On January 13, 2026, the immigration judge found that Ms. Aguayo Montes was removable. (ECF No. 1, PageID # 4). Ms. Aguayo Montes filed an appeal with the Board of Immigration Appeals, which remains pending. *Id*. at PageID # 4-5. On April 14, 2026, the immigration judge denied Ms. Aguayo Montes' custody redetermination request, holding that he lacked jurisdiction to consider it. (ECF No. 1-2).

On April 17, 2026, Ms. Aguayo Montes filed her 28 U.S.C. § 2241 habeas petition. (ECF No. 1). Ms. Aguayo Montes raises two grounds for relief, asserting that: (1) her detention has become unconstitutionally prolonged in violation of the Fifth Amendment to the United States Constitution; and (2) her continued detention without a bond hearing violates the Immigration and

3

Nationality Act and the Fifth Amendment. On the same day, the Court referred the matter to me to prepare an expedited report and recommendation on Ms. Aguayo Montes' petition. (ECF No. 2). On April 24, 2026, Sheriff Hildenbrand filed a Rule 12(b)(6) motion to dismiss him as a respondent. (ECF No. 5). On April 27, 2026, the Federal Respondents filed an answer and return of writ. (ECF No. 6). On April 29, 2026, Ms. Aguayo Montes filed her traverse. (ECF No. 7).

## III.     ANALYSIS

Ms. Aguayo Montes seeks a writ of habeas corpus requiring Respondents to either release her from custody or grant her a bond hearing. In response, the Federal Respondents argue that the Court lacks jurisdiction over Ms. Aguayo Montes' petition, that she has failed to exhaust her claims, and that she is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and thus not entitled to a bond hearing.[2]

Ms. Aguayo Montes' petition is far from the first to raise these issues. Rather, in the months since DHS' policy change and the *Matter of Yajure Hurtado* decision, courts throughout the country have seen an "overwhelming surge" of habeas petitions raising similar arguments. *Millan v. Voorhies*, No. 4:25-cv-02779, 2026 WL 248376, at *9 (N.D. Ohio Jan. 30, 2026) (report and recommendation) (noting that in the four months since the *Matter of Yajure Hurtado* decision, there had been more than 1,000 district court decisions, including more than 200 from district courts in the Sixth Circuit, addressing similar issues).

Courts have reached differing answers on many of those questions, both nationwide and within this district. However, a "clear majority" of courts have rejected the Federal Respondents' arguments and have granted habeas relief to petitioners like Ms. Aguayo Montes. *Lopez v. Noem*, No. 3:26 CV 128, 2026 WL 395202, at *10 (N.D. Ohio Feb. 12, 2026). After careful consideration, I agree with that clear majority. Accordingly, I recommend that the Court grant in part Ms. Aguayo

---

[2] Sheriff Hildenbrand has not responded to Ms. Aguayo Montes' petition on the merits; instead, he asks only that the Court dismiss him because he is not a proper respondent.

Montes' petition for a writ of habeas corpus and require Respondents to provide her with a bond hearing.

### A. **<u>Proper Respondent</u>**

Before turning the substance of the parties' arguments, I must address the identity of the proper respondent. Sheriff Hildenbrand has filed a Rule 12(b)(6) motion to dismiss, arguing that he is not a proper respondent. In addition, the Federal Respondents state in a footnote to their return of writ that the only proper respondent is ICE Field Office Director Kevin Raycraft, who should be substituted for Rebecca Adducci as a respondent while all other respondents are dismissed.

A district court must direct a writ of habeas corpus "to the person having custody of the person detained." 28 U.S.C. § 2243. In the immigration context, the Sixth Circuit has held that, although the warden of the facility where the alien is detained "technically has day-to-day control," the "INS District Director for the facility where the petitioner is located has power over alien habeas petitioners." *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003) (quotations omitted). Accordingly, "a detained alien generally must designate his immediate custodian—the INS District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Id*. at 322.

Relying on *Roman*, several courts in this district have held that the District Director is the proper respondent and that other respondents should be dismissed. *See Martinez Hernandez v. Raycraft*, No. 3:25-CV-02591-DAR, 2026 WL 698639, at *3 (N.D. Ohio Mar. 12, 2026) (report and recommendation) (recommending dismissal of respondents other than ICE District Director); *Hu v. Raycraft*, No. 4:26-cv-113, 2026 WL 539117, at *1 n.1 (N.D. Ohio Feb. 26, 2026) (report and recommendation) (same). Ms. Aguayo Montes has not argued to the contrary. I therefore recommend that the Court grant Sheriff Hildenbrand's motion to dismiss, substitute Field Director

Kevin Raycraft for Rebecca Adducci, and dismiss all other Federal Respondents.

### B.  <u>Subject Matter Jurisdiction</u>

"Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The writ of habeas corpus is "available to every individual detained in the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). Accordingly, the protections of the writ extend to noncitizens in immigration matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). However, Congress has limited federal court jurisdiction over habeas petitions in the immigration context in several ways. The Federal Respondents argue that one of those statutory provisions, 8 U.S.C. § 1252(b)(9), deprives the Court of jurisdiction over Ms. Aguayo Montes' petition. That provision provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9).

§ 1252(b)(9) is an "unmistakable 'zipper' clause." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). "Its purpose is to consolidate 'judicial review' of immigration proceedings into one action in the court of appeals . . . ." *INS v. St. Cyr*, 533 U.S. 289, 313 (2001). That does not mean, however, that § 1252(b)(9) is all-encompassing. Rather, in *Jennings v. Rodriguez,* 583 U.S. 281 (2018), the Court made clear that § 1252(b)(9) has meaningful limits. There, petitioners argued that they were entitled to periodic bond hearings while detailed awaiting removal. 583 U.S. at 291. The *Jennings* plurality "assume[d] for the sake of argument" that the actions taken to detain aliens without a bond hearing pending removal

constituted "action[s] taken . . . to remove [them] from the United States." *Id*. at 292-93. The plurality also acknowledged that, if removal proceedings had not been initiated, "the aliens would not be in custody at all." *Id*. at 293.

The plurality nonetheless rejected the assertion that such an action "arises from" a removal proceeding for purposes of § 1252(b)(9), stating that such an expansive interpretation "would lead to staggering results" and would "make claims of prolonged detention effectively unreviewable." *Id*. Thus, while the plurality did not need to provide a "comprehensive interpretation" of § 1252(b)(9), it held that § 1252(b)(9) "does not present a jurisdictional bar" where the alien is "not asking for a review of an order of removal . . . not challenging the decision to detain them in the first place or to seek removal . . . and . . . not even challenging any part of the process by which their removability will be determined." *Id*. at 294-95.

In light of *Jennings*, most courts in this district have held that § 1252(b)(9) does not deprive a district court of jurisdiction to consider a petition alleging that the government must grant aliens like Ms. Aguayo Montes a bond hearing. *See Lemus v. Lynch*, No. 4:26-cv-203, 2026 WL 496731, at *3 (N.D. Ohio Feb. 23, 2026) (holding that § 1252(b)(9) "presents no bar" where a petitioner "only challenges the government's failure to provide a bond hearing" rather than a removal order, the initial decision to detain or seek removal, or the process by which removability will be determined); *Gu v. Noem*, 3:26-cv-00036, 2026 WL 621356, at *4 (N.D. Ohio Mar. 5, 2026) (holding that *Jennings* "resolves [the] argument" against the Federal Respondents' position because petitioner was "not challenging the removal proceeding" but rather "the statutory interpretation regarding his detention and due process rights"); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 3122837, at *7 (N.D. Ohio Nov. 7, 2025) ("The question of whether statutory provisions require detention without bond hearings do[es] not 'arise from' actions taken to remove noncitizens."); *Garcia Rodriguez v. Raycraft*, No. 4:26-cv-0302, 2026 WL 656956, at *4 (N.D.

Ohio Mar. 9, 2026) ("claims of unconstitutional detention do not constitute a question of law or fact 'arising from' an action taken or proceeding brought to remove an alien"); *Lopez*, 2026 WL 395202, at *3 (holding that respondents' "expansive" interpretation was "unsupported by [§ 1252(b)(9)'s] plain language and contradicts Supreme Court precedent on this issue").

The Federal Respondents cite to a decision from this district holding that § 1252(b)(9) deprives district courts of jurisdiction to hear claims that aliens are entitled to bond hearings, *Amaya-Velis v. Raycraft*, 816 F. Supp. 3d 745 (N.D. Ohio 2026). In light of *Jennings*, however, I respectfully conclude that *Amaya-Veliz* is less persuasive than decisions holding that the question of whether an alien is entitled to a bond hearing does not "arise from" the removal proceeding and does not fall within the scope of § 1252(b)(9). Other courts in this district have declined to follow *Amaya-Velis* on the same grounds. *See Lemus*, 2026 WL 496731, at *4 (disagreeing with *Amaya-Velis* and similar decisions because they "conflate a challenge to detention itself with a challenge to the lack of a bond hearing"); *Kaur*, 2026 WL 709728, at *7 (disagreeing with *Amaya-Velis*). I recommend that the Court reject the Federal Respondents' argument that § 1252(b)(9) deprives it of jurisdiction over Ms. Aguayo Montes' petition.[3]

### C. **Exhaustion**

The Federal Respondents next argue that the Court should dismiss Ms. Aguayo Montes' petition because she failed to exhaust her administrative remedies. If Congress mandates exhaustion, a court must require a petitioner to exhaust administrative remedies before bringing suit. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "The exhaustion doctrine both allows agencies to 'apply [their] special expertise in interpreting relevant statutes' and promotes judicial efficiency." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (quoting *Cent. States, Se. &*

---

[3] In other cases, the Government has argued that another provision, 8 U.S.C. § 1252(g), also deprives district courts of jurisdiction over petitions like Ms. Aguayo Montes'. The Federal Respondents have not raised that argument in this proceeding.

*Sw. Areas Pension Fund v. 888 Corp.*, 813 F.2d 760, 764 (6th Cir. 1987)).

The Federal Respondents concede that there is no statute mandating exhaustion here. "When 'Congress has not clearly required exhaustion, sound judicial discretion governs' whether or not exhaustion should be required." *Shearson*, 725 F.3d at 593 (6th Cir. 2013) (quoting *McCarthy*, 503 U.S. at 144). "This discretion is referred to as 'prudential' exhaustion . . . and such a court-made exhaustion rule must comply with statutory schemes and congressional intent." *Lopez*, 2026 WL 395202, at *5 (quoting *Island Creek Coal Co. v. Bryan*, 917 F.3d 738, 746 (6th Cir. 2019)).

Moreover, "[w]hile a court has discretion to fashion exhaustion requirements, there are some exceptions to the exhaustion doctrine." *Shearson*, 725 F.3d at 594. "For example, exhaustion may not be required when the administrative remedy 'does not serve the purposes behind the exhaustion doctrine[ ],' if the 'administrative remedies are inadequate or not efficacious,' or 'where pursuit of administrative remedies would be a futile gesture.'" *Id*. (quoting *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981)). "Additionally, '[e]xhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.'" *Id*. (quoting *Bangura v. Hansen*, 434 F.3d 487, 493 (6th Cir. 2006)). Finally, a court may waive exhaustion where a "legal question is 'fit' for resolution and delay means hardship . . . ." *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000).

"[T]he Sixth Circuit has not yet decided whether courts should impose prudential exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Ramirez Moreno v. Lynch*, Case No. 4:26 CV 275, 2026 WL 496634, at *2 (N.D. Ohio Feb. 23, 2026). "In evaluating prudential exhaustion in habeas petitions seeking bond hearings, district courts in this circuit generally consider three factors[.]" *Gu*, 2026 WL 621356, at *5; *see also Cuyun*, 2026 WL 362791, at *6 (noting that the three-factor test is drawn from Ninth Circuit

9

caselaw) (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). Those factors are whether: (1) the agency has expertise such that agency consideration is necessary to generate a proper record and reach a decision; (2) relaxation of the exhaustion requirement would encourage petitioners to deliberately bypass administrative review; and (3) administrative review is likely to enable the agency to correct mistakes and preclude judicial review. *Gu*, 2026 WL 621356, at *5.[4]

Weighing those factors, I conclude that a prudential exhaustion requirement is not warranted here. First, the question Ms. Aguayo Montes presents is one of pure statutory interpretation, and no agency expertise or consideration is necessary to generate a proper record. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 387 (2024) (interpreting the meaning of statutes is a judicial function). In addition, waiving exhaustion would not encourage petitioners to bypass administrative review, as "[t]he Sixth Circuit has repeatedly held [that] the BIA cannot review constitutional claims . . . ." *Gu*, 2026 WL 621356, at *6 (citing cases). Finally, administrative review is unlikely to enable the agency to correct mistakes, as the BIA already held in *Matter of Yajure Hurtado* that petitioners like Ms. Aguayo Montes are not entitled to bond hearings.

Even if a prudential exhaustion requirement were appropriate, I would conclude that exhaustion should be waived in the circumstances presented here. In light of *Matter of Yajure Hurtado*, there is no reason to believe that the agency intends to reconsider its determination that Ms. Aguayo Montes is not entitled to a bond hearing, and exhaustion would therefore be futile. *See Gu*, 2026 WL 621356, at *6-7; *Lemus*, 2026 WL 496731, at *7 ("there is no question that the government's administrative agency has predetermined the disputed issue by having a clearly stated position that the petitioner is not eligible for the relief sought") (quotations omitted); *Lopez*,

---

[4] In *Lemus*, Chief Judge Lioi held that the three-factor test was "not particularly well suited" to these types of cases, and instead waived exhaustion on futility and hardship grounds, though Chief Judge Lioi also held that exhaustion should be waived even if the three-factor test applied. 2026 WL 496731, at *7 n. 5. As discussed below, I alternatively find that any exhaustion requirement should be waived under Judge Lioi's formulation as well.

2026 WL 395202, at *6 ("This Court cannot think of anything more clearly amounting to a 'futile gesture' than requiring Petitioner to spend time appealing the Immigration Court's decision to deny her a bond hearing to the very agency that passed down that unequivocal directive.").

"There also can be no doubt that the legal question is fit for resolution by th[e] Court now," as it turns on a matter of pure statutory interpretation. *Lemus*, 2026 WL 496731, at *8. Moreover, additional delays would impose a hardship on Ms. Aguayo Montes, who remains detained without a bond hearing and separated from her infant child. As another court in this Circuit has noted, "[b]ond appeals before the BIA, on average, take six months to complete." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 779 (E.D. Mich. 2025).

In light of those considerations, "the majority of district courts in the Sixth Circuit [] have concluded that requiring exhaustion would not promote judicial efficiency or protect administrative authority because it would only delay the resolution of [petitioner's] legal questions." *Lemus*, 2026 WL 496731, at *7 (quotations omitted) (citing cases); *see also Lopez*, 2026 WL 395202, at *5 (joining "several other[s] in this circuit" in concluding that exhaustion was not required).

The Federal Respondents cite to a number of cases from this district dismissing similar petitions for failure to exhaust. However, "[a] close inspection reveals that all of the decisions . . . were issued by one of two jurists." *Lemus*, 2026 WL 496731, at *6 n.4. After careful consideration, I conclude that the decisions declining to impose an exhaustion requirement or excusing exhaustion are more persuasive. I recommend that the Court decline to dismiss Ms. Aguayo Montes' petition on exhaustion grounds.

### D. **8 U.S.C. §§ 1225(b)(2)(A) and 1226(a)**

Turning now to the merits of the parties' arguments, this case comes down to the interplay between two different statutory provisions, 8 U.S.C. § 1225(b)(2)(A) and 8 U.S.C. § 1226(a). §

1225(b)(2)(A) provides that, with exceptions not relevant here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1226(b)(2)(A). § 1226(a), by contrast, provides that, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). § 1226(a) further provides that the Attorney General "may release" the alien on bond. 8 U.S.C. § 1226(a)(2).

Under § 1226(a), detention is discretionary. Under § 1225(b)(2)(A), detention is mandatory. The question of which provision governs here is thus dispositive of Ms. Aguayo Montes' petition. Ms. Aguayo Montes argues that § 1226(a) governs because she is not an alien "seeking admission" under § 1225(b)(2)(A) as she has been in the country for years and is not currently "seeking" to enter it. The Federal Respondents, by contrast, argue that *all* aliens who enter the United States and have not been admitted are aliens "seeking admission" under § 1225(b)(2)(A).

As always, I start with the text of the relevant statutes, which must be read in context. *United States v. Green*, 167 F.4th 832, 851 (6th Cir. 2026). § 1225(b)(2)(A) provides that "applicant for admission" who is "seeking admission" shall be detained. 8 U.S.C. § 1225(b)(2)(A). § 1225(a)(1) defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) . . . ." 8 U.S.C. § 1225(a)(1). "Admission" and "admitted" mean "with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). As an alien present in

the United States who has not been lawfully admitted, Ms. Aguayo Montes is an "applicant for admission."

However, § 1225(b)(2)(A) does not say that all applicants for admission must be detained. It says that an applicant for admission who is "seeking admission" must be detained unless the application is clearly and beyond a doubt entitled to be admitted. 8 U.S.C. § 1225(b)(2)(A). The term "seeking admission," is not defined. "When Congress does not define a term, courts 'must give the words their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import.'" *Green*, 167 F.4th at 851-52 (quoting *Grand Traverse Band of Ottawa & Chippewa Indians v. US Att'y W. Dist. of Mich.*, 369 F.3d 960, 967 (6th Cir. 2004)). Dictionaries "often shed light on the ordinary meaning of the term." *Id*. at 852.

Merriam-Webster defines the term "seeking" as "to ask for," "to try to acquire or gain," or "to make an attempt." Merriam-Webster, Seeking, *available at* https://www.merriam-webster.com/dictionary/seeking (last accessed May 5, 2026). As a number of courts in this district have held, the use of the active verb "seeking" implies present action beyond mere presence in the country. *See Lemus*, 2026 WL 496731, at *11 ("the government's interpretation fails to give effect to Congress's choice to use the active term 'seeking' in describing those immigrants covered by § 1225(b)(2)"); *Lopez*, 2026 WL 395202, at *8 ("'Seeking' requires something more than just passively being present in the United States"); *Gu*, 2026 WL 621356, at *8 ("Taken together, the plain meaning of an 'alien seeking admission' is an individual presently asking for, or trying to presently gain, entry into the United States. That is, an 'alien seeking admission' implies the alien is not already in the United States and is actively seeking to be admitted into the country's borders.").

The Federal Respondents argue that the term "alien seeking admission" is another way to refer to an "applicant for admission." But "[i]t is a basic canon of statutory interpretation that

13

'[e]very word in the statute is presumed to have meaning' and that courts should 'give effect to all the words to avoid an interpretation which would render words superfluous or redundant.'" *In re Village Apothecary, Inc.*, 45 F.4th 940, 948 (6th Cir. 2022) (quoting *King v. Zamiara*, 788 F.3d 207, 212 (6th Cir. 2015); *see also TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

Congress could have drafted § 1225(b)(2)(A) to say that an applicant for admission must be detained pending removal proceedings. It did not do so. Instead, Congress said that an applicant for admission who is *seeking admission* must be detained. The Federal Respondents' interpretation "would require the Court to ignore the specific text Congress used in the statute." *Gu*, 2026 WL 621356, at *9; *see also Lemus*, 2026 WL 496731, at *10 ("this Court will not presume that Congress intended its words to be redundant or superfluous").

In light of § 1225(b)(2)(A)'s plain language, "[t]he vast majority of courts" including "almost every district court within the Sixth Circuit" have rejected the Federal Respondents' interpretation. *Lemus*, 2026 WL 496731, at *12; *see also Lopez*, 2026 WL 395202, at *10 ("this Court joins the clear majority of courts across the country that have refused to read words out of the statute, ignore superfluous language, downplay Supreme Court dicta, and disregard long-standing principles of immigration law"); *Millan*, 2026 WL 248376, at *9 ("Overwhelmingly district courts have disagreed with the agency's interpretation of Section 1225(b)(2)(A)'s mandatory detention scheme"); *Kaur*, 2026 WL 709728, at *12 ("the Court joins the overwhelming majority of courts across the country in concluding that § 1226(a) applies to Petitioner").

The structure of the relevant provisions further weighs against the Federal Respondents'

14

interpretation. In *Jennings*, the Court described § 1226(a) as a "default rule" that permits detention of certain "alien[s] present in the country," including "aliens who were inadmissible at the time of entry or who have been convicted of certain criminal offenses since admission." 583 U.S. at 288. By contrast, the Court noted that § 1225(b) "applies primarily to aliens seeking entry into the United States . . . ." *Id*. at 297. While not a direct holding of the Court and not dispositive, "[t]he Supreme Court's analysis in *Jennings* thus supports [the] reading that § 1225(b)(2) applies to immigrants seeking to lawfully enter the United States, while § 1226(a) provides a default rule applicable to immigrants detained in the United States, regardless of whether they were originally admitted." *Lemus*, 2026 WL 496731, at *11.

Two other considerations further buttress that conclusion. First, § 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." 8 U.S.C. § 1225. "The use of 'arriving aliens' strongly corroborates that it applies to aliens who are in the act of *arriving* in the United States." *Gu*, 2026 WL 621356, at *10. By contrast, § 1226 uses the broader title, "Apprehension and detention of aliens." 8 U.S.C. § 1226. "Although section headings cannot limit the plain meaning of a statutory text, they supply cues as to what Congress intended." *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 583 U.S. 366, 380 (2018) (citations and internal quotations omitted).

In addition, subsequent legislative history counsels against interpreting § 1225(b)(2)(A) as applying to aliens already present in the United States, regardless of whether those aliens are actively seeking admission. In 2025, Congress passed the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). The Laken Riley Act added 8 U.S.C. § 1226(c)(1)(E), which provides that the Attorney General "shall take into custody" an alien who is inadmissible under several provisions, including 8 U.S.C. § 1182(a)(6)(A), if the alien is charged with, arrested for, convicted of, or admits to, certain felonies. § 1182(a)(6)(A), in turn, provides that an alien is inadmissible if the

15

alien is present in the United States without being admitted or paroled, or if the alien arrives in the United States at a time or place other than as designated by the Attorney General. 8 U.S.C. § 1182(a)(6)(A). If aliens who are present in the United States without being admitted or paroled are already subject to mandatory detention under § 1125(b)(2)(A), it would render that portion of § 1226(c)(1)(E) superfluous. *See Gu*, 2026 WL 621356, at *10-11; *Lemus*, 2026 WL 496731, at *12; *Cuyun*, 2026 WL 362791, at *10 (noting that accepting the Federal Respondents' argument would potentially render the Laken Riley Act's amendments adding § 1226(e) "entirely unnecessary").

For all these reasons, I reject the Federal Respondents' interpretation of §§ 1225(b)(2)(A) and 1226(a). Notably the Second Circuit recently did the same. *See Cunha v. Freden*, --- F.4th ---, 2026 WL 1146044 (2nd Cir. Apr. 28, 2026). The *Cunha* court held that the Government's "novel" interpretation of §§  1225(b)(2)(A) and 1226(a) "defies their plain text" and that a contrary reading "is dictated by the plain text of these provisions, and further confirmed by the statute's context, structure, history, and purpose." *Id*. at *2. The court also held that interpreting § 1225(b)(2)(A) as not applying to aliens who are already in the country and are not actively seeking admission "comports with the Supreme Court's established understanding of Section 1225 and 1226" and "reflects Executive Branch practice over thirty years and across five Presidential administrations." *Id*. Finally, the court held that, "even if the government's newfound interpretation of Section 1225(b)(2)(A) were plausible . . . [it] would nonetheless reject it based on [the court's] obligation to construe these statutes in a manner that would avoid the serious constitutional questions attendant to what would be the broadest mass-detention-without-bond mandate in our Nation's history for millions of noncitizens." *Id*.

The Seventh Circuit reached a similar conclusion at the preliminary injunction stage in a case challenging an alleged policy of arresting noncitizens without a warrant. *See Castañon-Nava v. United States Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (holding that the

Government was not likely to succeed on argument that § 1225(b)(2)(A) mandated detention of aliens arrested within country because, among other things, government's interpretation "would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction").

The Federal Respondents rely on the Fifth Circuit's recent contrary decision in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). There, the court held, in a split decision, that "being an 'applicant for admission' is not a condition independent from 'seeking admission.'" *Id*. at 502. The court also held that, to the extent that interpretation rendered the term "seeking admission" redundant, "'redundancies are common in statutory drafting'" and do not give a court license to rewrite the statutory text. *Id*. at 503 (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).

One judge dissented, concluding that the majority "disregard[ed] the ordinary tools of statutory interpretation based on speculation" about what would best honor Congress' goals in passing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *Id*. at 516 (Douglas, J., dissenting). The dissent also criticized the majority for upending settled understandings of immigration law. The dissent stated that "[t]he Congress that passed IIRIRA would be surprised to learn it had also required the detention without bond of two million people" and that "[f]or almost thirty years there was no sign anyone thought it had done so, and nothing in the congressional record or the history of the statute's enforcement suggests that it did." *Id*. at 508. The dissent concluded that "Congress did not secretly require two million noncitizens to be detained without bond, when nothing like this had ever been done before, and the whole history of American immigration law suggested it would not be." *Id*. at 516.

The Federal Respondents also rely on the Eighth Circuit's recent decision in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The *Avila* court "agree[d] with the Fifth Circuit that the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same." *Id*. at

17

1134. The court also concluded that "[i]f Congress wanted to make clear that 'seeking admission' was an independent requirement in the statute, it could have easily done so." *Id*. at 1134. But "[s]ince the structure of the text does not indicate that this phrase has a standalone meaning, merely using it as a synonym for something else does not make it surplusage." *Id*. at 1135.

In response, the dissent faulted the majority for altering settled understandings, stating that "[a]ll three branches of government understood the IIRIRA to maintain the distinction between unadmitted noncitizens in the interior and those arriving at the border for detention purposes." *Id*. at 1140 (Erickson, J., dissenting). The dissent further noted that "[f]ive presidential administrations, including the first Trump administration, and most immigration judges interpreted § 1225 to apply only to those arriving at the border," stating that "[t]his conduct is something courts ought to consider." *Id*.

While *Buenrostro-Mendez and Avila* support the Federal Respondents' position, I, like other courts in this district, respectfully disagree with their reasoning, which effectively writes the term "seeking admission" out of the statute. *See Gu*, 2026 WL 621356, at *12 ("as this Court sees it, the . . . *Buenrostro-Mendez* decision[] require[s] a linguistic leap the Court cannot make"); *Lemus*, 2026 WL 496731, at *13 ("Respectfully, this Court disagrees with the Fifth Circuit and other courts adopting the government's interpretation"); *Martinez Hernandez*, 2026 WL 698639, at *14 (holding that *Buenrostro-Mendez*, as non-controlling precedent, did not change court's analysis). I find the Second Circuit's opinion in *Cunha* and the dissenting opinions in *Buenrostro-Mendez* and *Avila* more persuasive on both statutory interpretation and historical practice.

In sum, I recommend that the Court join the majority of courts in this district, this circuit, and nationwide, and hold that § 1225(b)(2)(A) does not apply to aliens who are passively present in the United States and are not "seeking admission." I also recommend the Court hold that Ms. Aguayo Montes is not subject to mandatory detention under § 1225(b)(2)(A), and is, instead,

18

subject to § 1226(a), which allows for discretionary bond.

### E.  Due Process

That leaves only Ms. Aguayo Montes' claim that her constitutional due process rights are being violated because Respondents continue to detain her without granting her a bond hearing even though she is detained under § 1226(a).

The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST., amend. V. "[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam)).

In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court set forth three factors a court must consider in evaluating procedural due process claims: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id*. at 334-35.

All three factors weigh in favor of Ms. Aguayo Montes. With respect to the first factor, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. The failure to grant Ms. Aguayo Montes a bond hearing when she is subject only to discretionary detention under § 1226(a) thus infringes on a vital private interest.

With respect to the second factor "many district courts have found that an individualized bond hearing ensures that immigration judges can assess whether noncitizens pose a flight risk or

19

a danger to the community, thereby mitigating the erroneous deprivation of noncitizens' liberty interests." *E.V.*, 2025 WL 3122837, at \*12 (citing cases).

With respect to the final factor, the government certainly has an interest in enforcing immigration laws. "[T]hat does not, however, translate into an interest in detaining Petitioner[] without a bond hearing." *Id*. Indeed, "any burdens imposed by providing due process were mandated by law" and the Federal Respondents "cannot claim complying with the law as stated is overly burdensome." *Gu*, 2026 WL 621356, at \*14.

The Federal Respondents argue that Ms. Aguayo Montes' due process rights have not been violated because § 1225(b)(2) does not permit a petitioner to be released on bond. For the reasons discussed above, however, Ms. Aguayo Montes is detained under § 1226(a), not § 1225(b)(2), and detention under § 1226(a) is discretionary, not mandatory.

The Federal Respondents also cite *Demore v. Kim*, 538 U.S. 510 (2003), for the proposition that statutory provisions denying bond during administrative removal proceedings do not violate the due process clause. *Demore* involved § 1226(c), which provides that the Attorney General "shall take into custody any alien" who is removable because the alien has been convicted of certain crimes. 8 U.S.C. § 1226(c). The Court held that § 1226(c) did not violate the due process clause because "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." *Demore*, 538 U.S. at 513.

As several courts in this district have held, *Demore* does not control the due process inquiry where a petitioner is not detained under § 1226(c). *See Rodriguez v. Greene*, No. 4:26-cv-0333, 2026 WL 574961, at \*11 (N.D. Ohio Mar. 2, 2026) ("Since Petitioner does not fall under the ambit of section 1226(c), *Demore* is clearly distinguishable."); *Hu,* 2026 WL 539117, at \*10 (holding

20

that *Demore* was "not on point" because it concerned "mandatory detention for certain criminal aliens" and petitioner did not fall within its scope); *Hernandez-Cine v. Voorhies*, No. 4:26-cv-421, 2026 WL 972364, at *5 (N.D. Ohio Apr. 10, 2026) (holding that *Demore* is "narrower than [Respondents] claim[]" and was inapplicable where petitioner did not have criminal arrests or convictions). I agree with those well-reasoned decisions and hold that *Demore* does not alter the analysis where, as here, a petitioner is purportedly detained under § 1225(b)(2)(A) rather than § 1226(c).[5]

Accordingly, I recommend that the Court grant in part Ms. Aguayo Montes' petition for a writ of habeas corpus and order the Federal Respondents to provide her with a bond hearing within 7 days of the Court's order on this report and recommendation.[6]

## IV.     RECOMMENDATION

For all the reasons set forth above, I RECOMMEND that the Court grant Sheriff Hildenbrand's motion to dismiss (ECF No. 5). I further recommend that the Court substitute Field Director Kevin Raycraft for Rebecca Adducci as a respondent and dismiss all other Federal Respondents. Finally, I RECOMMEND that the Court GRANT IN PART Ms. Aguayo Montes' Petition (ECF No. 1) and ORDER the Federal Respondents to provide her with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days of the adoption of this Report and Recommendation.

Dated: May 6, 2026

*/s Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

---

[5] Ms. Aguayo Montes states that ICE took her into custody after she was charged with domestic violence under state law. She also says that state prosecutors dismissed the charges against her without prejudice. The Federal Respondents do not dispute that assertion in their return of writ. Nor do they cite to § 1226(c) or argue that Ms. Aguayo Montes is subject to mandatory detention in light of her domestic violence charge.

[6] In her petition, Ms. Aguayo Montes asks the Court to order Respondents to either release her or to grant her a bond hearing. In her traverse, Ms. Aguayo Montes focuses primarily on her argument that the Court should grant her a bond hearing. Under the circumstances presented here, granting Ms. Aguayo Montes a bond hearing is more appropriate than ordering her immediate release. Accordingly, I recommend that the Court deny the petition to the extent Ms. Aguayo Montes seeks immediate release from custody.

21

**NOTICE TO PARTIES REGARDING OBJECTIONS**

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates

22

Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).